UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

In re:   Lizabeth Anne Stinson

        Debtor                                                 CASE NO. 05-33685

                                                             CHAPTER    7

William Stephen Reisz, Chapter 7
       Trustee for the Bankruptcy Estate of
       Lizabeth Anne Stinson

        Plaintiff

vs.

Roy Allen Stinson

        Defendant                                    Adv. Proc. No. 06-03050

**MEMORANDUM-OPINION**

THIS ADVERSARY PROCEEDING is before the Court after the conclusion of a trial on the merits of the cause of action brought by Plaintiff against Defendant under 11 U.S.C. §§548(a)(1)(A) and (B) and 11 U.S.C. §544(b) utilizing various provisions of KRS Chapter 378. Plaintiff seeks to avoid the transfer of certain real property located at 13991 Poplar Lane (the "Real Property"). For the reasons set forth below, the Court determines that the transfer of Real Property constituted a fraudulent conveyance within the meaning of 11 U.S.C. §548(a)(1)(B) and that such transfer must be set aside. By virtue of 28 U.S.C. §§157(b)(2)(F) and (H) this is a core proceeding. The following constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr. P. 7052.

FINDINGS OF FACT

1

The transfer of the Real Property that Plaintiff seeks to avoid took place as a result of Defendant and Debtor's divorce. Defendant and Debtor filed for divorce on April 1, 2005, and their divorce became final on April 13, 2005. They had been married for approximately 24 years. Notably for purposes of this Adversary Proceeding, neither Defendant nor Debtor claimed any non-marital interest in any property in the Mandatory Case Disclosure signed under penalty of perjury and filed with Jefferson County, Kentucky, Family Court (the "Family Court").

In their divorce, Defendant and Debtor divided their marital property by consensual Property Settlement Agreement, which was approved by the Family Court, rather than through a vigorously litigated proceeding in which the Family Court had to act as arbiter. The Property Settlement Agreement provided that Defendant would retain (1) the Real Property, which had a fair market value of approximately $270,000.00; (2) a used car business, which was valued at approximately $20,000.00 based on the value of assets on hand less company debt[1]; (3) certain stock that had been originally purchased for $20,000.00[2]; (4) two life insurance policies with a combined cash surrender value of approximately $18,000.00[3]; and (5) a personal bank account with a balance of approximately $500.00. Although not expressly mentioned in the Property Settlement Agreement, Defendant also received in the divorce a hot air balloon valued at $5,000.00 and a lawn tractor valued at $2,500.00. Defendant assumed sole liability for the approximately $170,000.00 debt

---

[1]Although the Court believes that the business should probably have been given a higher value as an ongoing business to account for such things as "goodwill," the Court here will accept the $20,000.00 value for purposes of its analysis. Also, Defendant attempts to argue that the business was a non-marital asset and therefore should not be considered when comparing the value of assets retained by each party in the divorce. As noted above, however, in his divorce proceeding Defendant under penalty of perjury declined to assert any non-marital interest in any asset. The Court therefore finds Defendant's argument here less than credible.

[2]Defendant asserts that the stock is essentially valueless. In the absence of evidence otherwise, the Court will accept Defendant's valuation for purposes of its analysis.

[3]There is some question as to whether the cash surrender value of one of the insurance policies should be increased by $20,000.00. Defendant borrowed that amount against the total cash surrender value of the insurance to fund his business. Since that debt is already accounted for among the debts used to calculate the net value of Defendant's business, arguably it should not have been used to reduce the surrender value of the insurance. Ultimately, however, whether the insurance policy had a cash surrender value of $33,000.00 or $13,000.00 does not change the outcome of this case, so the Court need not make a finding as to this issue.

encumbering the Real Property, approximately $17,500.00 of Debtor's personal debt to two individuals, approximately $13,000.00 of business debt to Debtor's father, and approximately $22,000.00 of credit card debt.

Under the Property Settlement Agreement, Debtor essentially received (1) the right for three years to use a $10,000.00 automobile provided by Defendant, rent and maintenance free[4]; (2) the right at the end of such three years to receive from Defendant a vehicle worth $10,000.00 or $10,000.00 cash[5]; (3) the right to live at the Real Property for three years by paying Defendant $700.00 per month rent[6]; (4) home furnishings that Debtor valued at $50,000.00[7]; and (5) a personal bank account with a balance of approximately $600.00  Debtor assumed sole liability for the approximately $100,000.00 in credit card and other personal debt that she testified that she incurred without Defendant's knowledge or approval.  Defendant and Debtor agreed that Defendant would not pay Debtor any maintenance.

Debtor transferred all of her right, title and interest in and to the Real Property to Defendant

---

[4] Defendant has asserted that this represents a value to Debtor of $475 per month under IRS local transportation expense standards, or $17,100.00 over the three year period.  Defendant probably should have reduced each of the $475 monthly payments to a present value before aggregating them.  Nevertheless, the Court will use the $17,100.00 figure for purposes of its analysis here because the difference between it and the figure to be obtained using a present value analysis would be so small that it would not affect the Court's decision herein.

[5] This figure technically should also be reduced to its present value at the time of the divorce.  The Court will use the $10,000.00 figure for simplicity of analysis because the difference between it and the present value figure would be so small that it would not affect the Court's decision herein.

[6] Defendant failed to submit sufficient evidence to place a value on what amounts to a leasehold interest.  The Court cannot speculate as to this value and, therefore, must assign it no value for purposes of the Court's analysis.

[7] Debtor testified that she placed the $50,000.00 value on the furnishings in her divorce because she estimated that it would cost her that much to replace those items if she did not receive them in the divorce.  On the other hand, she also testified that if she had to sell those items, they would only warrant "yard sale" prices, which would generate approximately $2,500.00. Debtor also placed a value of $2,500.00 on the furnishings in Schedule B of her bankruptcy petition.  The Court finds that amount to be the true market value of the furnishings.

by Quitclaim Deed dated April 15, 2005. Defendant filed her Chapter 7 bankruptcy petition, Statement of Financial Affairs and Schedules on May 31, 2005 (collectively, "Defendant's Bankruptcy Papers"). Plaintiff filed his complaint initiating this Adversary Proceeding on March 21, 2006. Defendant has stipulated that the transfer of the Real Property took place within one year prior to Debtor's bankruptcy petition and that she was insolvent at the time of such transfer.

## CONCLUSIONS OF LAW

Plaintiff seeks to avoid the transfer of the Real Property under 11 U.S.C. §§548(a)(1)(A) and (B) and 11 U.S.C. §544(b) utilizing various provisions of KRS Chapter 378. As discussed more fully below, the Court finds in favor of Plaintiff on his constructive fraud claim under 11 U.S.C. §548(a)(1)(B). Accordingly, the Court need not consider Plaintiff's other claims.

To prevail under 11 U.S.C. §548(a)(1)(B) in this pre-BAPCPA case, a plaintiff must prove by a preponderance of evidence that (1) the debtor had an interest in the property transferred; (2) the transfer occurred within one year of the petition date; (3) the debtor was insolvent at the time of the transfer or became insolvent as a result of it; and (4) the debtor received less than reasonably equivalent value in exchange for the transfer. *In re Quality Communications*, 347 B.R. 227, 234 (Bankr. W.D.Ky. 2006). In this case, there can be no dispute that the first three elements have been satisfied. The only issue is whether the Debtor received reasonably equivalent value in exchange for the transfer of her interest in the Real Property.

Determining whether a debtor received reasonably equivalent value requires two somewhat separate inquiries: (1) was there a receipt of what may properly be considered "value;" and (2) was that value "reasonably equivalent to what was transferred." *Id.* The Bankruptcy Code defines "value" for fraudulent transfer purposes as "property, or satisfaction or securing of a present or antecedent debt of the debtor." 11 U.S.C. §548(d)(2); *see also In re Wilkinson*, 319 B.R. 134, 138 (Bankr. E.D.Ky. 2004).

The analysis here is rendered somewhat complicated by the fact that the transfer in question occurred as part of a divorce settlement in which baskets of assets and obligations were traded off against each other. Defendant urges the Court to make a "surface determination" that the division of assets between Defendant and Debtor fell within the "range of likely distribution that would be ordered by the state divorce court if the property division had actually been litigated in the state

court." *In re Sorlucco*, 68 B.R. 748, 753 (Bankr. N.H. 1986). Defendant fails to note, however, that such approach was expressly rejected by the Sixth Circuit in *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693 (6th Cir. 1999), in favor of simply comparing the value of property surrendered with the value of property received. Although *Fordu* was decided based upon Ohio state fraudulent conveyance law, this Court must be guided by the Sixth Circuit Court of Appeals' fundamental recognition that divorce proceedings and fraudulent conveyance proceedings encompass different policy objectives, and, hence, "divergent decisional standards." Accordingly, this Court will apply only Bankruptcy Code concepts in considering "value" exchanged between Defendant and Debtor and whether the same was reasonably equivalent.

By comparing the value of the assets that Defendant received in the divorce with that of what Debtor received in the divorce, it becomes clear that Debtor did not receive reasonably equivalent value for the Real Property. Defendant received the Real Property, which had a fair market value of approximately $270,000.00 and equity of approximately $100,000.00 at the time of the transfer.[8] He also received assets such as a business, life insurance, a bank account, a hot air balloon, and a lawn tractor with a combined value of approximately $46,000.00. He assumed approximately $222,000.00 of debt. Thus, on a net basis, Defendant received approximately $94,000.00 in assets out of the divorce. In contrast, Debtor received in the divorce approximately $30,200.00 in assets; that is, household furnishings worth $2,500.00, the use of a vehicle for three years (to which the Court has assigned a value of $17,100.00), a $10,000.00 vehicle or equivalent cash after those three years, and a bank account with $600.00. Clearly, the assets received by Debtor were not reasonably equivalent in value to those received by Defendant. Thus, Debtor did not receive adequate compensation for those assets, which include the Real Property.

Because Debtor did not receive adequate compensation for her interest in the Real Property under 11 U.S.C. §548(a)(1)(B), the Court must void its transfer and bring it back into Debtor's bankruptcy estate. Plaintiff has carried the required burden of proof regarding all of the elements

---

[8]Defendant argues that the Court should consider only the "marital" portion of the equity, $74,000.00. As discussed previously, Defendant under penalty of perjury declined to assert a non-marital interest in any property before the Family Court. Therefore, the Court will not place any credibility in Defendant's argument here. Even if the Court were to use the $74,000.00 "marital" equity figure, however, it is clear that Debtor did not receive adequate compensation for the Real Property.

5

under 11 U.S.C. §548(a)(1)(B). A separate Order consistent with the foregoing has been entered in accordance with Federal Rule of Bankruptcy Procedure 9021.